NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

STEPHEN J. BENSON,

Petitioner,

v.

UNITED STATES OF AMERICA, et al.,

Respondents.

Civil Action No. 13-0213 (RMB)

**OPINION**

**BUMB, District Judge:**

This matter comes before the Court upon Petitioner's submission of his filing fee of $5 and a letter, Docket Entry No. 5, filed in response to this Court's prior order.

Petitioner is a federal inmate confined at the FCI Fairton ("Fairton"), New Jersey. He challenges the disciplinary sanction imposed upon him on the basis of an incident that took place at Fairton library on February 25, 2012. See Docket Entry No. 1, at 21. That incident gave rise to an incident report produced by Officer Conception ("reporting officer") who witnessed the incident. See id. The report read:

> Saturday February 25, 2012, at 10:25 AM, I was in the Education Department Leisure Library. I looked up from my table [and saw Petitioner] seated at the middle table, staring at me. It was at this time I realized [Petitioner] was masturbating. Specifically, he was seated with his pants pulled down lower than appropriate, with his penis out and in his hands, massaging it. I ordered [Petitioner] to stop what he was doing [and] radioed to [the supervising Officers]

> asking them to report to [the library]. When they arrived, [Petitioner] was removed . . . .

Id.

At 8:05 p.m. on the day of the incident, Petitioner was served with a notice of a disciplinary charge against him. See id. at 37. In response, he conceded that, during the incident, he indeed "'was sitting at the table with [his] hands [dipped] in[to his] pants." Id. He claimed, however, that he did not commit a violation because he had "psoriasis over most of [his] body [including his genitals, and so he] was [not masturbating during the incident but merely] scratching [him]self [in his genital area]." Id.

Petitioner had his disciplinary hearing ten days after the incident. See id. He waived his right to request a staff representative, see id., but

> requested [an opportunity to call] the inmates that were sitting at his table in [the library] at the time of the incident. [Petitioner] stated he did not know the identity of the inmates at the table with him, but indicated they were Jamaican. [The hearing officer] informed [Petitioner] that[,] without proper identification[, the hearing officer] would not know who to call as a witness. [Petitioner] also [requested to] call[] Dr. Morales as a witness [asserting that] Dr. Morales would testify that [Petitioner] ha[d] psoriasis over a large portion of his body [including his genital area. The hearing officer] informed [Petitioner] that neither the existence nor extent of [Petitioner's] psoriasis [was] disputed [since the hearing officer] accept[ed Petitioner's] assertion that he ha[d] psoriasis over a large portion of his body. Therefore, Dr. Morales was not called [as Petitioner's] witness because [the hearing officer found that Dr.

> Morales'] testimony would be [duplicative and superfluous].

Id. at 38.

Petitioner was found guilty of the charged disciplinary infraction, and served with the finding that read as follows:

> [The hearing officer] finds [that Petitioner] committed the prohibited act of Engaging in Sexual Acts, Code 205, when [Petitioner] you took part in intimate physical contact with [him]self by exposing and rubbing [his] penis in view of staff. . . . [Petitioner made an] admission that the reporting officer observed [Petitioner] with [his] hands [deepened into his] pants. [Petitioner] admits having [his] hands in [his] pants but den[ies] any wrong[]doing [on the grounds] that [he has] psoriasis and [he] had [his] hands in [his] pants to scratch [him]self. [The hearing officer] took into consideration [that] statement but gave little weight to [Petitioner's] defense. [Petitioner's] version of events is unreasonable . . . . It is reasonable to believe that[,] if a person had an itch of that nature and degree[, that person] would have went to the restroom to appropriately address the issue. [Petitioner] did not [do that]. [Therefore, the hearing officer] finds the reporting officer's account more reasonable to believe and gives more weight to her testimony. [Petitioner is sanctioned to] disallow[ance of] good conduct time [in the amount of] 27 days.

Id. at 38-39.[1]

Screening Petitioner's challenges to the aforesaid loss of his good-conduct-time credits, this Court noted Petitioner's assertions that his due process rights were violated because: (a)

---

[1] The Bureau of Prison ("BOP") "Handbook" distributed to all inmates upon their admission to a federal correctional facility notifies the inmates that, inter alia, "Inmates who engage in inappropriate sexual behavior can be charged with [for instance, a violation of] Code 205/(A): Engaging in a Sex Act." http://www.bop.gov/locations/institutions/eng/ENG_fdc_aohandbook.pdf, at *6.

he was not allowed to call Dr. Morales to testify that he had psoriasis, including in his genital area; (b) the hearing officer did not assist him in obtaining the names of the three inmates whom Petitioner identified merely as "Jamaican"; (c) he believes that the hearing officer was biased against him; (d) the hearing officer found the incident report executed by the reporting officer more credible than Petitioner's position; (e) the hearing officer's final findings report was dated April 11, 2012, but delivered to Petitioner three days later; and (f) Petitioner allegedly experienced certain obstacles while he was exhausting his claims administratively, but the administrative exhaustion process was duly completed.[2] See generally, Docket Entry No. 1.

The Court explained to Petitioner that such allegations did not amount to a sufficient claim because Petitioner's incident report and his own admission that he had his hands dipped into his pants and kept scratching his genital area in a public place (and in open view of the reporting officer) supplied "some evidence" required for the finding that Petitioner "engaged in inappropriate sexual behavior" because an inmate's public

[2] In addition, Petitioner asserted that, had he been provided with a certain "30 Inmate Out-Count sheet," he could have figured out "the last names of [the] three witnesses" whom he identified to the hearing officer as merely "Jamaican." Id. at 9. While the Petition is less than clear as to this issue, some statements made therein could be construed as suggesting that Petitioner might have requested this "30 Inmate Out-Count sheet" from his hearing officer right prior to the hearing, but had that request denied. See Docket Entry No. 1. at 9-10.

touching, scratching, massaging, etc. his/her genital area qualifies as both "sexual" and "inappropriate" conduct regardless of whether or not it is done for the purposes of his/her sexual gratification or to satisfy other bodily needs, or to offend the staff, to entertain other inmates, as a joke, etc. because such conduct could be *perceived* by a reasonable observer as sexual and inappropriate. See Benson v. United States, 2014 U.S. Dist. LEXIS 2089, at *8-13 (D.N.J. Jan. 8, 2014) (this Court's prior opinion, citing, inter alia, Pachtinger v. Grondolsky, 340 F. App'x 774, 776-77 (3d Cir. 2009), for the observation that an inmate who is sanctioned under Code 205 need "not [be] found to have engaged in a sexual act; rather, [(s)]he [should be] found to have engaged in activity that could have been perceived as a sexual act and which was disruptive to the orderly running of the institution").

Then, turning to the procedural safeguards implicated by a disciplinary hearing, this Court noted Petitioner's speculative position that his hearing officer was biased against him, even though the hearing officer was a male officer distinct and different from the female reporting officer. This Court, correspondingly, explained to Petitioner that, "to obtain habeas corpus relief on a challenge based on tribunal's misconduct, an inmate must show *actual* bias, i.e., state the facts verifying that the decision-maker treated him/her in a fashion showing

unfairness per se," and mere impressions or deducements cannot establish bias. See id. at *15-16 (relying on Johnston v. Love, 940 F. Supp. 738, 754 (E.D. Pa. 1996), aff'd, 118 F.3d 1576 (3rd Cir.), cert. denied, 522 U.S. 972 (1997); United States v. Gallagher, 576 F.2d 1028, 1039 (3d Cir. 1979)).[3]

This Court also took note of Petitioner's allegation that he was denied an opportunity to call Dr. Morales as his witness, and that he wished to identify and call, as additional witnesses, the unidentified inmates who were "Jamaican." Citing Pachtinger, this Court explained to Petitioner that a denial of the opportunity to call a certain person as a witness might have a due process impact only if the litigant specifies what that person could have offered to aid the litigant's defense. See id. at *17-19.

Pointing out that Petitioner's hearing officer already accepted Petitioner's contention that Petitioner had psoriasis, including in his genital area, this Court concluded that Dr. Morales' testimony, even had it been offered, would not have altered the outcome of Petitioner's disciplinary hearing. See id. at *19.

---

[3] In addition, this Court dismissed, for lack of legal significance, Petitioner's allegations that: (a) the final report was dated three days prior to the date when it was delivered to Petitioner; and (b) Petitioner had experienced some "obstacles" to exhaustion even though his claims appear duly exhausted. See Benson, 2014 U.S. Dist. LEXIS 2089, at *16-17, n.7.

Then, this Court turned to Petitioner’s alleged inability to identify and call the three inmates (designated as “Jamaican”) as his witnesses. With regard to that claim, this Court explained to Petitioner that it was Petitioner’s obligation to provide his prison officials with these witnesses’ descriptions sufficient to allow identification of these witnesses. See id. at *19-21 (detailing the relevant legal regime and providing examples). However, mindful of Petitioner’s alleged request for examination of the “30 Inmate Out-Count sheet,” this Court directed him to clarify how the testimony of these unidentified inmates (had they been identified and called) would have aided Petitioner’s defense against the charge that he was engaged in a conduct perceived by the reporting officer as an inappropriate sexual act. See id. at * 22.

The letter at bar followed. See Docket Entry No. 5. In it, Petitioner stated:

> The factual reason[] for the calling for my 3[] witnesses was to impe[ach] the credibility of [the reporting officer. The disciplinary officer] took it upon himself to fabricate [that all three witnesses were] Jamaican, only one of them [was] Jamaican. . . . So the answer to the Court[’]s question [about] the difference the witnesses would have made remains a mist[e]ry because the [prison officials] were not going to allow [this issue] to develop[.] . . . [Petentially, these witnesses] would clarify that the [reporting officer] made no . . . statement [to Petitioner that he had] to stop doing what [he was doing, and they might have verified that Petitioner] was not facing in her direction. So therefore her assump[]t[i]ons [that Petitioner was masturbating] are incorrect. . . . The

> on[l]y thing that would have given [Petitioner a] minute chance [during the disciplinary hearing would be the scenario where the disciplinary officer would have] honored [Petitioner's self-serving position that he did not commit any] violation.

Id. at 1-2.

Petitioner's letter suggests his continuous confusion as to the legal issues at hand. As this Court already explained to Petitioner, he was *not* sanctioned upon a finding that he was engaged in the act of masturbation; rather, he was sanctioned upon a finding that he engaged in an inappropriate sexual behavior. Thus, it is of no relevance whether Petitioner was or was not facing the reporting officer. What matters is that Petitioner – while being in a public place – had his hands dipped into his pants and was scratching his genital area in a fashion that a reasonable observer, including the reporting officer, could perceive as an inappropriate sexual conduct. Correspondingly, as this Court already explained to Petitioner, the "witnesses' testimonies would be of any value to Petitioner only had these inmates testified that the entire process of Petitioner's dipping his hands into his pants and scratching his genital area was such that no reasonable observer could have perceived it to be inappropriate sexual conduct." Benson, 2014 U.S. Dist. LEXIS 2089, at *22.

No statement in Petitioner's letter at bar suggests that the unidentified inmates could have testified to any facts having

such effect. While this Court is mindful of the emotional importance the difference between the reporting officer's statement (that Petitioner was engaged in the act of masturbation) and Petitioner's position (that he was engaged in the act of scratching his genitals) has to Petitioner, Petitioner's emotions cannot affect the validity of the hearing officer's finding that Petitioner was engaged in an act that a reasonable observer could qualify as an inappropriate sexual conduct that violated the BOP regulations.[4]

Since Petitioner's letter verifies that – had the three unidentified inmates been identified and called as Petitioner's

---

[4] Petitioner appears to be under the impression that, had the three unidentified inmates testified that he was merely "scratching" his genital area rather than masturbating, the hearing officer would have been obligated to discredit the reporting officer's statement on the basis of that difference and/or would be obligated to dismiss the reporting officer's statement upon applying the preponderance of evidence test. However, neither that difference nor the "preponderance of evidence" standard are relevant to a disciplinary hearing. See, e.g., Hairston v. Heffron, 2010 U.S. Dist. LEXIS 134999, at *13 (D.N.J. Dec. 21, 2010) ("there is no question that the 'some evidence' standard is less exacting than the preponderance of the evidence standard: it merely requires that the decision not be arbitrary or not without any support in the record") (citing Gaither v. Anderson, 236 F.3d 817, 819 (7th Cir. 2000); Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987); Gibbs v. King, 779 F.2d 1040, 1044 (5th Cir. 1986)). As this Court already explained, a disciplinary sanction is valid if it is supported by merely "some evidence," meaning evidence that are more than a scintilla of evidence are sufficient to support a disciplinary finding. See Young v. Kann, 926 F.2d 1396, 1402 (3d Cir. 1991) ("warning against dependence upon a prison official's account without '*any* form of corroborative evidence'") (citation omitted, emphasis supplied).

witnesses – their testimony would not have been of legal significance for the purposes of Petitioner's disciplinary charge of "inappropriate sexual behavior" and resulting sanction, Petitioner's § 2244 challenges will be conclusively dismissed.

An appropriate Order follows.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: December 11, 2014